ROBERT R. AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111

ANDREW W. FERICH (*pro hac vice* to be filed)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111

BEN BARNOW (*pro hac vice* to be filed)
*b.barnow@barnowlaw.com*
ANTHONY L. PARKHILL (*pro hac vice* to be filed)
*aparkhill@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL  60606
Telephone: (312) 261-2000

*Attorneys for Plaintiffs and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MACTAVISH, JOHNSON QU, and MARGARET WEBB, On Behalf of Themselves and All Others Similarly Situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| AMERICAN HONDA MOTOR CO., INC. and HONDA MOTOR COMPANY LTD., a Japanese corporation, | |
| Defendants. | |

CLASS ACTION COMPLAINT

Plaintiffs David MacTavish, Johnson Qu, and Margaret Webb (collectively, "Plaintiffs"), by and through their attorneys, file this action on behalf of themselves and all others similarly situated against Defendants, American Honda Motor Co., Inc. ("Honda USA") and Honda Motor Company Ltd. ("Honda Japan" and together with Honda USA, "Defendants" or "Honda"), and allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs bring this action individually, and on behalf of a nationwide class and classes for the commonwealths of Massachusetts and Pennsylvania (more fully defined below), for the benefit and protection of purchasers and lessees of Honda's model years 2017, 2018, and 2019 Ridgeline vehicles (together, the "Vehicle(s)" or "Class Vehicle(s)").

2.    As alleged herein, the Class Vehicles are defective and unsafe. The Vehicles have a dangerous and defective tailgate wiring harness configuration that results in damage to the harness that causes critical vehicle safety components, namely the Vehicles' backup camera, to function intermittently or to fail altogether. This poses a significant safety hazard to drivers and occupants of Class Vehicles, and other members of the public.

3.    The defect is the result of the tailgate wiring harness being comprised of inadequate materials such that normal operation of the tailgate causes the wiring harness to fatigue and eventually sever the connection to the Vehicles' backup cameras (the "Defect").

4.    Honda is well aware of the Defect. Consumers presenting Class Vehicles for a Defect-related repair are informed that Honda knows about the issue, that dealerships are seeing the issue frequently, and that replacement harnesses have been on backorder. Nevertheless, when owners and lessees of the Class Vehicles

- 1 -

CLASS ACTION COMPLAINT

seek a repair for the Defect, they routinely are told there is no recall and are forced to pay for this safety-related repair at their own expense.

5.      Prior to selling the Vehicles, Honda knew that the tailgate wiring harnesses were defective, yet omitted and kept this material fact from Plaintiffs and other class members. Rigorous pre-release testing made Honda aware of the Defect.

6.      Honda has also issued a series of technical service bulletins ("TSB") announcing that it is collecting sample Class Vehicle tailgate harnesses as part of an investigation that appears to be directly related to the Defect. The Defect is also widely discussed and complained about, including on message boards devoted to the Honda Ridgeline and in complaints made directly to the National Highway Traffic Safety Administration (NHTSA), all of which Honda reviews and is aware. Nevertheless, Honda has failed to recall the Vehicles, has not successfully remedied the Defect, has not made owners and lessees of the Class Vehicles whole, and has not made the Class Vehicles safe.

7.      The defective wiring harnesses included in the Class Vehicles purchased or leased by Plaintiffs and the other class members did not perform as warranted, and Honda omitted information about the Defect.

8.      As a result of Honda's misconduct, Plaintiffs and class members were each injured on account of receiving Vehicles that were fundamentally different from what they believed they were purchasing, and less valuable than was represented.

9.      In manufacturing, marketing, and selling and/or leasing these unsafe Vehicles, Honda has engaged in unfair, deceptive, and misleading consumer practices with respect to the marketing and sale and/or lease of the Vehicles, and has breached its warranty with the Vehicles' purchasers and lessees, including Plaintiffs.

10.     As a result of the Defect, Plaintiffs and class members are unable to utilize their Vehicles as advertised and have incurred damages as a result.

CLASS ACTION COMPLAINT

11.     The Defect presents a safety concern, and though numerous consumers have complained about it, Honda has failed to adequately address the Defect.

12.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers to obtain redress for those who have purchased or leased the Vehicles across the United States. Plaintiffs seeks remedies for Honda's breaches of express and implied warranties, fraud, and unjust enrichment, and seeks declaratory and injunctive relief to prevent Honda's continued misconduct.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, exclusive of interest and costs, the proposed classes have at least 100 members, and this is a class action in which certain of the class members (including Plaintiffs) and Defendants are citizens of different states.

14.     Venue is proper in this judicial District under 28 U.S.C. § 1391 because Honda USA is headquartered in this judicial District, Honda conducts significant business throughout this District, and a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in, or emanated from, this District.

15.     At all pertinent times, Honda was engaged in the marketing, advertisement, sale, and lease of the Class Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

### *Plaintiff David MacTavish*

16.     Plaintiff MacTavish is an adult individual who resides in and is a citizen of Medfield, Massachusetts.

- 3 -

CLASS ACTION COMPLAINT

17.     In or about July 2017, Plaintiff MacTavish purchased a new 2017 Honda Ridgeline at Boch Honda, an authorized Honda dealership located in Norwood, Massachusetts. Plaintiff MacTavish uses his Class Vehicle for family and household use.

18.     In or about May 2020, Plaintiff began experiencing the Defect, and his backup camera began intermittently failing. Plaintiff took his Class Vehicle to Boch Honda and presented the vehicle and the issue for a repair. Plaintiff MacTavish insisted that the backup camera is a safety concern and that Boch Honda—an agent of Defendants—should provide a repair at no charge, but the dealership stated that because there is no recall for the issue, he would have to pay for a repair. The dealership charged Plaintiff MacTavish $421.85 to repair the Defect.

19.     While Honda's dealership temporarily eliminated the Defect at Plaintiff MacTavish's cost, Honda failed to permanently repair or otherwise correct the Defect in the Vehicle in order to permit Plaintiff to safely continue driving it without the risk of the backup camera failing again.

20.     Plaintiff anticipates that he will soon experience the unsafe wiring Defect and resultant backup camera failure as he continues to use the dual-action tailgate on his Class Vehicle.

21.     Plaintiff has sustained out of pocket damages, has lost time associated with getting the Vehicle repaired, and lost use of his Vehicle during the time it was being repaired, all as a result of the Defect.

22.     Because of the Defect, and Honda's inability or refusal to permanently remedy the issue, Plaintiff continues to be exposed to a safety risk associated with backup camera failure in his Class Vehicle.

23.     At the time of purchasing his Vehicle, Plaintiff did not know that the Vehicle contains an unsafe wiring Defect that causes backup camera failure, and that

- 4 -

he would not be able to safely drive the Vehicle without risk of his backup camera failing. Had Honda disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff purchasing his Class Vehicle, Plaintiff MacTavish would not have purchased the Vehicle, or would not have paid the purchase price that he did. Plaintiff relied upon Honda that it was providing the full picture of information regarding his Vehicle, and relied upon the idea that Honda would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

### *Plaintiff Johnson Qu*

24.     Plaintiff Qu is an adult individual who resides in and is a citizen of Waltham, Massachusetts.

25.     On or about January 15, 2018, Plaintiff Qu purchased a new 2018 Honda Ridgeline at Bernardi Honda, an authorized Honda dealership located in Natick, Massachusetts. With his Class Vehicle, Plaintiff Qu also purchased a new Honda Care Extended Warranty, for approximately $2,500. Plaintiff Qu uses his Class Vehicle for family and household use.

26.     On or about October 15, 2018, Plaintiff began experiencing the Defect, and his backup camera failed. Plaintiff took his Class Vehicle to Bernardi Honda and presented the vehicle and the issue for a repair. Because his Vehicle was still in warranty under the Honda extended warranty, the dealership agreed to replace Plaintiff's tailgate wiring harness at no cost. The dealership informed him however that there was no manufacturer fix for the Defect. The mileage at the time was approximately 15,000 miles.

27.     Following the repair, from time to time, Plaintiff Qu experienced intermittent backup camera failure. Most recently, in March 2021, Plaintiff Qu began

CLASS ACTION COMPLAINT

experiencing intermittent backup camera failure. Specifically, the backup camera in his Class Vehicle began flickering. The Defect has again manifested in his Vehicle.

28.     While Honda's dealership temporarily eliminated the Defect after Plaintiff Qu's first presentment of the Vehicle, Honda failed to permanently repair or otherwise correct the Defect in the Vehicle in order to permit Plaintiff to safely continue driving it without the risk of the backup camera failing again.

29.     Plaintiff anticipates that he will continue to experience the unsafe wiring Defect and resultant backup camera failure as he continues to use the dual-action tailgate on his Class Vehicle. Plaintiff's Vehicle currently has 79,500 miles on the odometer, and his Vehicle will soon be out of warranty, leaving Plaintiff with no recourse for the wiring Defect and continued backup camera failures.

30.     Because of the Defect, and Honda's inability or refusal to permanently remedy the issue, Plaintiff continues to be exposed to a safety risk associated with backup camera failure in his Class Vehicle.

31.     At the time of purchasing his Vehicle, Plaintiff did not know that the Vehicle contains an unsafe wiring Defect that causes backup camera failure, and that he would not be able to safely drive the Vehicle without risk of his backup camera failing. Had Honda disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff purchasing his Class Vehicle, Plaintiff Qu would not have purchased the Vehicle, or would not have paid the purchase price that he did. Plaintiff relied upon Honda that it was providing the full picture of information regarding his Vehicle, and relied upon the idea that Honda would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiff received less than what he paid for his Vehicle and did not receive the benefit of his bargain.

- 6 -

CLASS ACTION COMPLAINT

*Plaintiff Margaret Webb*

32.    Plaintiff Webb is an adult individual who resides in and is a citizen of Philadelphia, Pennsylvania.

33.    On or about October 27, 2017, Plaintiff Webb purchased a new 2018 Honda Ridgeline at Keenan Honda, an authorized Honda dealership located in Doylestown, Pennsylvania. At the time she purchased her Vehicle, Plaintiff also purchased an extended warranty for her Vehicle for approximately $2,100. Plaintiff Webb uses her Class Vehicle for family and household use.

34.    In or about June of 2020, Plaintiff Webb began experiencing the Defect. When putting her Class Vehicle in reverse, she would experience a black screen on the backup camera, an orange grid, and could not actually see a picture on the display.

35.    Within approximately a few weeks of the Defect manifesting, Plaintiff took her Class Vehicle to Keenan Honda and presented the Vehicle and the issue for a repair.

36.    At the dealership, a dealership representative examined the Vehicle and tried to convince Plaintiff Webb that the wiring damage may have been caused by another vehicle colliding with her car, and otherwise blame Plaintiff for the Defect. The dealership then provided a price for the repair and indicated that the Defect was not covered under her extended warranty. The dealership charged Plaintiff Webb approximately $183.91 to repair the Defect.

37.    While Honda's dealership temporarily eliminated the Defect at Plaintiff Webb's cost, Honda failed to permanently repair or otherwise correct the Defect in the Vehicle in order to permit Plaintiff to safely continue driving it without the risk of the backup camera failing again.

CLASS ACTION COMPLAINT

38.     The Defect has manifested once again in Plaintiff's Vehicle. In or about early May 2021, the backup camera began failing again, including displaying a black screen and orange grid, but no actual backup picture or display.

39.     Plaintiff continues to experience the unsafe Defect and resultant backup camera failure as she continues to use the dual-action tailgate on her Class Vehicle.

40.     Plaintiff has sustained out of pocket damages and has lost time associated with getting the Vehicle repaired as a result of the Defect. Furthermore, Honda has failed to provide an adequate repair, and the repair it did provide—for which it charged Plaintiff Webb—failed. The Vehicle remains unsafe and in a defective state.

41.     Because of the Defect, and Honda's inability or refusal to permanently remedy the issue, Plaintiff continues to be exposed to a safety risk associated with backup camera failure in her Class Vehicle.

42.     At the time of purchasing her Vehicle, Plaintiff did not know that the Vehicle contains an unsafe wiring Defect that causes backup camera failure, and that she would not be able to safely drive the Vehicle without risk of her backup camera failing. Had Honda disclosed the Defect on its website, through its dealership, in its warranty manual, or elsewhere prior to Plaintiff purchasing her Class Vehicle, Plaintiff Webb would not have purchased the Vehicle, or would not have paid the purchase price that she did. Plaintiff relied upon Honda that it was providing the full picture of information regarding her Vehicle, and relied upon the idea that Honda would not withhold material information about safety defects in the Vehicle, including the Defect. As a result, Plaintiff received less than what she paid for her Vehicle and did not receive the benefit of her bargain.

CLASS ACTION COMPLAINT

***Defendant Honda USA***

43.    Honda USA is a North American subsidiary of Honda Japan, and was founded in 1959. It is headquartered in Torrance, California, and, thus, is a citizen of California. Honda USA markets, sells, and leases the Class Vehicles throughout the United States, including in this District. Honda USA is responsible for sales, marketing, service, distribution, import, and export of Honda-branded products, including vehicles and parts, in California, and in the United States. Honda USA is also the warrantor and distributor of Honda vehicles, including the Vehicles, in California and throughout the United States. Honda USA has thousands of authorized dealerships across the United States—which are its agents—and controls the distribution of automobiles, parts, services, and warranty repairs Honda vehicles throughout the United States, all of which are under Honda USA's control. Honda USA authorizes these distributors and dealerships to sell Honda vehicles, parts, and accessories and to service and repair Honda vehicles using Honda parts.

***Defendant Honda Japan***

44.    Honda Japan is a corporation existing under the laws of Japan and headquartered in Tokyo, Japan. Honda Japan manufacturers and distributes automobiles, as well as parts for Honda-branded vehicles, and is the parent company of Honda USA and all other Honda-branded corporations headquartered California. Upon information and belief, the design and manufacture of Class Vehicles, including their component systems and any repairs or service necessary, is the primary focus of Honda Japan.

## SUBSTANTIVE ALLEGATIONS

45.    This action is brought against Defendants on behalf of Plaintiffs and all persons who purchased or leased model year 2017-2019 Honda Ridgeline vehicles.

- 9 -

CLASS ACTION COMPLAINT

46.     Honda sells Class Vehicles to its authorized distributors and dealerships, which, in turn, sell or lease those vehicles to consumers. After these dealerships sell cars to consumers, including Plaintiffs and members of the classes, they purchased additional inventory from Honda to replace the vehicles sold and leased, increasing Honda's revenues. Thus, Plaintiffs' and class members' purchases of Vehicles accrue to the benefit of Honda by increasing its revenues.

### Overview of the Honda Ridgeline

47.     The Honda Ridgeline was initially introduced in 2006 (first generation) and, after a slight hiatus in production, re-introduced in 2017 (second generation). The second-generation Ridgelines were first placed on the market for sale in mid-2016, and first sold as a model year 2017 vehicle. The Ridgeline is a mid-size unibody pickup truck with a crew-cab short-box configuration.

48.     One of the features of the Ridgeline is the inclusion of a two-way or "dual-action" tailgate system. The dual-action tailgate allows owners and lessees of the Class Vehicles to open the tailgate vertically—as can be done with most traditional pick-up trucks—but also horizontally, such that the tailgate can swing" open. The images below depict both options for opening the tailgate in the Vehicles:



**Vertical (traditional pick-up truck) tailgate action**

- 10 -

CLASS ACTION COMPLAINT



**Horizontal ("swinging") tailgate action**

49.    Based on publicly available automobile sales data, Honda sells a substantial number of Class Vehicles.

50.    The Monroney (window) stickers for the Vehicles inform consumers that an included safety feature in the Vehicles is a backup camera. An example of this is depicted below, under "SAFETY"[1]:

---

[1] MONRONEYLABELS.COM, *2018 Honda Rideline Rtl E Awd,* https://monroneylabels.com/cars/2083548-2018-honda-ridgeline (last visited May 21, 2021).

- 11 -

CLASS ACTION COMPLAINT



### The Defective Tailgate Wiring Harness in the Ridgelines

51. The Class Vehicles are equipped with defective tailgate wiring harnesses, highlighted in the image below[2]:

---

[2] The following photos are "screen grabs" at 0:19 and 0:39 and of the YouTube

CLASS ACTION COMPLAINT





video, *2017 Honda Ridgeline – Backup Camera Stopped Working (Wiring Destroyed)*, YOUTUBE (Feb. 28, 2012), https://www.youtube.com/watch?v=myDPBpgwFrY.

CLASS ACTION COMPLAINT

52.    The tailgate wiring harness is composed of several separate wires responsible for transmitting power and data to the backup camera in a wire loom. Due to a defect in materials and workmanship, the wiring insulators, strain reliefs, and the metal conductors inside these wires are prone to fatiguing and breaking, resulting in an intermittent or permanent short circuit and the malfunction of the backup camera. By nature, the Defect becomes increasingly severe over time.

53.    When the tailgate is opened horizontally, at the location of the tailgate pivot, the tailgate pinches the tailgate wiring harness, causing the wiring coating and the internal wiring to wear, and eventually break or sever. The materials used for the wiring and the wiring coatings in the tailgate wiring harness are inadequate to withstand the wear caused by the repeated "swinging" opening and closing of the Vehicles' tailgate.

54.    As the wiring materials wear and become damaged, the backup cameras in the Vehicles begin to work intermittently due to short-circuiting, or the cameras fail altogether when the circuit is broken due to wires severing.

***Class Members' Experiences With the Defect***

55.    The internet is replete with complaints from Class Vehicle owners and lessees who, like Plaintiffs, have experienced the unsafe Defect and resultant backup camera failure. Honda did not repair or otherwise correct the Defect in the Vehicles in order to permit Plaintiffs or class members to safely continue driving their Vehicles without risk of the tailgate wiring harness being damaged or severed and, as a result the backup camera failing, creating a risk of crashes and fatal back-overs.

56.    Entire message board threads are devoted to complaints and discussion about the Defect. For example, on Ridgelineownersclub.com, there is a discussion thread entitled "2017-2018 broken tailgate harness causes backup camera failure,"

CLASS ACTION COMPLAINT

with sixteen (16) pages of complaints and discussion about the Defect.[3] A sampling of the discussion is below (all *sic*):



---

[3] RIDGELINE OWNERS CLUB, *2017-2018 broken tailgate harness causes backup camera failure*, https://www.ridgelineownersclub.com/threads/2017-2018-broken-tailgate-harness-causes-backup-camera-failure.217776/ (last visited May 21, 2021).

CLASS ACTION COMPLAINT

P

**progro**
Registered 🇺🇸
Joined Jun 18, 2019
14 Posts

#16 · Jun 18, 2019

Last night my backup camera went out. Took a look at the wiring harness and see a cut wire. After lifting the tailgate, there is a lot of movement in that wiring harness and I can see eventually all of the wires being cut.

Since its just out of warranty, the dealer won't cover it and was just thinking about splicing it which should work but eventually with all of the movement with the harness just see it being an ongoing problem.

I'm interested if any other RL owners have had this problem and what solutions they may have to fix it.

I've attached a photo to show the issue.

Thanks in advance!



P

**progro**
Registered 🇺🇸
Joined Jun 18, 2019
14 Posts

#21 · Jun 18, 2019

I called their Technical Research & Support group spoke to Kyle who said they are aware of the issue and pointed me back to the dealer. I'll let you know what the dealer says. It has 38K miles so just out of warranty.

👍 Sparkland, Carsmak and zroger73

💬 Reply                                                      🗋 Save  ⦟ Share

2

**2012 Alabaster**
Registered 🇺🇸
Joined Feb 5, 2012
115 Posts

#23 · Jun 18, 2019

My 2017 (12K miles) loom had a break at the same point but it did not cut through the wires (yet). I was able to add another (more flexible) loom over the top (Painless Powerbraid) for now. I'm going to keep an eye on it to see if it gets abraded again.

👍 Sparkland and zroger73

💬 Reply                                                      🗋 Save  ⦟ Share

- 16 -

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Cloyster**
Registered 🇺🇸

Joined Aug 8, 2017
51 Posts

#31  ·  Jul 16, 2019 (Edited by Moderator)

It went totally black. The guideline overlay still works fine, but no picture at all. Had it in to the dealer yesterday and they found the issue was not with the camera, but in the wiring harness in the tailgate. They said it got pinched at the tailgate swing point. All the insulation rubbed off and the wire died. I am due to receive a new harness in a couple of days. The tech mentioned they have seen another case like this in their database. Has anyone else had this problem?

Mods, please feel free to merge.



**olsonives**
Registered 🇺🇸

Joined Mar 26, 2018
8 Posts

#45  ·  Sep 22, 2019

I have a 2017 with 41,000 miles. Same issue with the broken tailgate wiring harness. My harness break looks like all the photos posted here. I bought a new wiring harness but it is the same as my current installed one; not a new revised one. Went to install it and using YouTube videos got the tailgate plastic panels removed. Looks pretty straight forward until where the harness wire disappears past the tailgate hinge. The final connection is in the last 10-12" of wire. It appears the connection is maybe under/in the bumper housing but I cannot find any video that shows how to get at this section of the truck. Anyone else replaced the tailgate wiring harness themselves? I am about 2 hours from the closest dealer but I may take the new harness to them and have them install it at my expense since I am out of warranty.



**A7540v8vRTLE**
Registered 🇺🇸

Joined Nov 12, 2017
7 Posts

#57  ·  Nov 18, 2019

> doubledouble said: ⊕
> 2018 Touring:
> Tailgate wiring exposed in hinge. Plastic cover has split/separated, may never have been attached correctly. I'll let the dealer fix this before I take it apart again, installing my Pop & Lock.
>
> Update: Dealer has ordered new tailgate (camera) wiring harness

Yes - same thing has happened to my 2017 - dealer quoted $780 to repair....this appears to be a common problem and a design defect.



**///Audience**
Registered 🇺🇸

#72  ·  Dec 19, 2019

My dealer told me that they can only replace my cracking tailgate harness with the same one since Honda only made the new part available for 2019 rather than superseding the old part number for 2017/18.

Looks like I'll just be fixing it myself vs getting a harness that's just as prone to failure.



**eric hunt**
Registered 🇺🇸

Joined Jan 10, 2020
7 Posts

#82  ·  Jan 10, 2020

> zroger73 said: ⊕
> Thanks for the update. That now makes four broken camera wiring harnesses reported here - two 2017's and two 2018's.
>
> Unless Honda made a running change to address this issue on vehicles manufactured beginning May 2018, I can see a recall coming for "inspect and replace or modify camera harness" since backup cameras have been mandatory since that date.

I don't know if you are still counting, but I bought a 2017 Ridgeline Black edition last month, drove it 350 miles, hauled the Xmas tree, and my camera quit. Exact same spot as your picture shows.

- 17 -

CLASS ACTION COMPLAINT



**Robert Ruiz**
Registered
Joined Oct 17, 2016
38 Posts

#116 · Apr 27, 2020

Here is my Question.... I read all about this issue. My 2017 RTL-T (USA) back up cam/display went out, the wires are visibly broken, at the same spot as everyone else's. I seen the How to.. repair pic and helpful hints. It doesn't look to bad. But I, just don't have the time. The Honda dealership quoted $2100 , ($350 Part and 8.5 hours Labor) is that correct!! has anyone else had the same quote.

I'm not Slow! I'm just in ECON Mode! :grin:



**Ben-PA**
Registered
Joined Apr 3, 2018
2 Posts

#137 · May 3, 2020

Add me to the list of 2017 wiring harness failures. 58000 miles. not willing to pay 100 dollars for the dealership to diagnose. My break looks exactly like the rest of the pictures here. Guess I get all the "breaks". Wind noise from drivers side, bad injectors, now broken wiring harness.





**OleBill**
Registered
Joined Aug 29, 2018
5 Posts

#198 · 6 mo ago

Just had the harness replaced in my 2018 G2 (56,000 mi.), $468.00. I had the service advisor check for a recall or bulletin because I had read about the issue on the forum. My original intent was to modify the wiring with the broken conductors, but I got lazy and it has turned cold. Glad to read that the part number changed. I'm keeping my fingers crossed.

👍 Nittany

**mainuh64**
Registered
Joined Sep 21, 2018
3 Posts

#187 · 8 mo ago

My local Honda Dealer provided me with their estimate to fix wiring harness to camera on my 2018 Ridgeline. At time of service, I also had a B16 service and 4W alignment done. **Harness Estimate: $1,600 +**. "a very labor intensive repair", "not related to engineering defect", and to "try getting fixed through my insurance company".
Advise to all: (under warranty) Get this work done the second you see or suspect breakage. Do not accept "jury-rigged" repairs like electrical tape.
**Record your vehicle with NHTSA to get this known safety defect documented outside of Honda's corporate bubble.**
I personally feel/hope this is an inevitable vehicle safety recall or class action lawsuit .

CLASS ACTION COMPLAINT

1    57.    Another site called vehie.com[4] contains numerous complaints about the

2  Defect:

3
**2017 Honda Ridgeline**

4  Parts: ELECTRICAL SYSTEM
Date of Incident: Mar-01, 2021
Date complaint filed: 14:09 Mar-03, 2021

5  Back up camera wire broke at tailgate hinge. Flawed design

6

2017 Honda Ridgeline

7  **2017 Honda Ridgeline**

8  Parts: ELECTRICAL SYSTEM
Date of Incident: Feb-02, 2021
Date complaint filed: 17:53 Mar-04, 2021

9  BACKUP CAMERA FAILED DUE TO WIRING HARNESS BEING LOCATED ON A BEND POINT. WHEN YOU OPEN THE TAILGATE YOU CAN SEE
THE EXPOSED WIRES THAT BEND WHEN OPENED. THIS HAPPENED AFTER I OPENED THE TAILGATE ON AN EXTREMELY COLD DAY (-10F).

10  IT LOOKS LIKE THIS FAILED DUE TO REPEATED OPENINGS OF THE TAILGATE. WHEN THE TAILGATE IS CLOSED THE WIRE HARNESS IS
LOOSE BUT WHEN IT IS OPENED THE HARNESS IS STRESSED BY PART OF THE TAILGATE. UPON TROUBLING SHOOTING THE ISSUE ONLINE

11  I FOUND MULTIPLE PEOPLE ARE HAVING THE SAME ISSUE. THERE ALSO SEEMS TO BE TSB FOR WORKING HARNESSES BUT NOTHING IF
YOURS HAS ALREADY BROKEN. HTTPS://WWW.RidgelineOWNERSCLUB.COM/THREADS/2017-2018-BROKEN-TAILGATE-HARNESS-
CAUSES-BACKUP-CAMERA-FAILURE.217776/

12
**2019 Honda Ridgeline**

13  Parts: ELECTRICAL SYSTEM | BACK OVER PREVENTION
Date of Incident: Apr-01, 2021
Date complaint filed: 15:18 Apr-15, 2021

14  Wire harness to backup camera is faulty causing camera screen failure to detect persons or objects.

15
**2019 Honda Ridgeline**

16  Parts: UNKNOWN OR OTHER | BACK OVER PREVENTION
Date of Incident: Feb-03, 2021
Date complaint filed: 09:03 Apr-26, 2021

17  Wiring harness broke at tail gate hinge. Harness fails dues to flexing when tailgate is opened and closed. Rear camera fails to operate. Can no
longer to objects or pedestrians when backing up. Did not see any object on the screen and almost back into a pedestrian in a parking lot.

18

19
**2019 Honda Ridgeline**

20  Parts: ELECTRICAL SYSTEM | BACK OVER PREVENTION
Date of Incident: Apr-09, 2021
Date complaint filed: 11:53 Apr-23, 2021

21  BACKUP CAMERA WHICH IS A MANDATORY SAFTEY FEATURE STOPPED WORKING. WIRING HARNESS WHERE IT ENTERS THE TAILGATE
WAS PINCHED AND WIRES SEVERED. THIS WAS FIXED UNDER WARRANTY. DEALER STATED THERE IS A TECHNICAL BULLETIN TO ROUTE

22  THE WIRING HARNESS DIFFERENTLY TO MINIMIZE THIS ISSUE. THERE ARE PLENTY OF COMPLAINTS ON THE Honda Ridgeline FORUMS OF
BACKUP CAMERAS FAILING DUE TO WIRING HARNESS ISSUE. PLEASE INVESTIGATE AS I BELIEVE HONDA SHOULD BE OFFERING AN
EXTENDED WARRANTY ON THE WIRING HARNESS AS THIS IS A MANDATORY SAFETY FEATURE THAT IS NOT RELIABLE.

23

24

25  _____

[4] VEHIE AUTOMOTIVE RESEARCH, *Honda Ridgeline Complaints*,
26  https://www.vehie.com/complaints/honda?vehie_model=ridgeline (last visited May
21, 2021).
27
28  CLASS ACTION COMPLAINT

58.    The following are some examples of complaints from owners and lessees of the Vehicles concerning the Defect available through NHTSA's website[5]:

**May 5, 2021** NHTSA ID NUMBER: 11415248

**Components: UNKNOWN OR OTHER, BACK OVER PREVENTION**

**NHTSA ID Number:** 11415248

**Incident Date** May 4, 2021

**Consumer Location** MILLTOWN, NJ

**Vehicle Identification Number** 5FPYK3F65HB****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | THE BACK UP CAMERA HAS CEASED WORKING DUE TO THE WIRING HARNESS BEING CUT AND CRIMPED IN THE TAILGATE ASSEMBLY. IT APPEARS TO BE A EXAMPLE OF A POOR DESIGN THAT COULD BE A SAFETY ISSUE. THE CONSTANT OPENING AND CLOSING OF THE GATE AND THE CHOICE OF POOR MATERIALS DOES NOT PROTECT THE WIRING. I NOTICED IT WHEN ATTEMPTING TO LEAVE A PARKING LOT. THROUGH MY RESEARCH IT IS A COMMON OCCURRENCE ON THESE MODELS. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▲

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| HONDA | RIDGELINE | 2017 |

---

[5] NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN.,
https://www.nhtsa.gov/recalls#vehicle.

CLASS ACTION COMPLAINT

**April 21, 2021** NHTSA ID NUMBER: 11413184

## Components: ELECTRICAL SYSTEM, VISIBILITY/WIPER, BACK OVER PREVENTION

**NHTSA ID Number:** 11413184

**Incident Date** January 1, 2021

**Consumer Location** GERMANTOWN, OH

**Vehicle Identification Number** 5FPYK3F73HB****

### Summary of Complaint

| | |
|---|---|
| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

THE REAR BACKUP CAMERA THAT IS USED EVERY SINGLE DAY HAS GONE COMPLETELY BLACK. THE WIRE HARNESS THAT RUNS FROM THE TRUCK TO THE TAILGATE HAVE SPLIT DUE TO OPENING AND CLOSING. THIS IS A VERY COMMON PROBLEM THAT IS NOT THE EASIEST TO FIX WHICH COSTS THE OWNERS. THIS WILL HAPPEN TO EVERY SINGLE 2017-2019 RIDGELINE. IT IS SIMPLY CAUSED BY OPENING AND CLOSING TAILGATE IN THE PARKED POSITION.

### 1 Affected Product ▲

### Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| HONDA | RIDGELINE | 2017 |

- 21 -

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**February 7, 2021** NHTSA ID NUMBER: 11395026
**Components: ELECTRICAL SYSTEM, BACK OVER PREVENTION**

**NHTSA ID Number:** 11395026

**Incident Date** February 6, 2021

**Consumer Location** MECHANICSBURG, PA

**Vehicle Identification Number** 5FPYK3F81JB****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | THE TAILGATE WIRING HARNESS IS DAMAGED BY ROUTINE OPENING OF THE TAILGATE. THIS CAUSES THE WIRES TO BE SEVERED, CAUSING FAILURE OF THE BACKUP CAMERA AND OTHER ELECTRICAL SYSTEMS IN THE TAILGATE. THE WIRING HARNESS BY DESIGN IS NOT STRONG ENOUGH TO HANDLE THE OPENING AND CLOSING OF THE TAILGATE. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

THIS IS AN ISSUE MANY OWNERS ARE EXPERIENCING

HTTPS://WWW.RIDGELINEOWNERSCLUB.COM/THREADS/2017-2018-BROKEN-TAILGATE-HARNESS-CAUSES-BACKUP-CAMERA-FAILURE.217776/PAGE-10

**1 Affected Product** ▲

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| HONDA | RIDGELINE | 2018 |

**April 15, 2021** NHTSA ID NUMBER: 11408256
**Components: ELECTRICAL SYSTEM, BACK OVER PREVENTION**

**NHTSA ID Number:** 11408256

**Incident Date** April 1, 2021

**Consumer Location** WEST SENECA, NY

**Vehicle Identification Number** 5FPYK3F57KB****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WIRE HARNESS TO BACKUP CAMERA IS FAULTY CAUSING CAMERA SCREEN FAILURE TO DETECT PERSONS OR OBJECTS. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▲

## Vehicle

| MAKE | MODEL | YEAR |
|---|---|---|
| HONDA | RIDGELINE | 2019 |

- 22 -

CLASS ACTION COMPLAINT

59.     Backup cameras are a critical safety feature in automobiles. Back-over crashes have killed hundreds of people each year and injure thousands more.[6] Recognizing the danger posed by back-over crashes, in 2008 Congress passed the Cameron Gulbransen Kids Transportation Safety Act, requiring regulators to enact measures requiring the adoption of technology to improve rearview visibility, which was finally embodied in Federal Motor Vehicle Safety Standard number 111. Accordingly, functioning backup cameras are a requirement of baseline vehicle functionality and a minimum level of quality. The defective tailgate wiring harness causes the backup camera on the Class Vehicles to malfunction or fail and, thus, the Defect poses a serious safety hazard.

60.     Compounding the seriousness of the Defect, Honda has not issued a TSB that actually provides a fix for the Defect. It has issued a series of similar bulletins that appear to relate only to the investigation of the Defect, all of which similarly state:

**Background**
American Honda (AHM) is collecting a HEALTHY tailgate harness from certain 2017-2018 Ridgelines which fits the criteria listed below.

**Qualifiers**
AHM is interested ONLY if the vehicle meets the following requirements:
    1.     Tailgate harness . . . has not been replaced.

---

[6] *See*, Nathan Bomey, *Backup cameras now required in new cars in the U.S.*, USA TODAY (May 2, 2018, 8:14 A.M.), https://www.usatoday.com/story/money/cars/2018/05/02/backup-cameras/572079002/.

CLASS ACTION COMPLAINT

**Action Required**

If you have or know of such a vehicle, please call Technical Research & Support (TRS) Group . . . . TRS will need to record certain vehicle information and provide you with further instructions.[7]

61.    Honda has issued at least eleven (11) TSBs of this nature under the following TSB numbers[8]:

- AER19020A
- APAS02252019902
- APAS03212019901
- APAS04022019903
- APAS04182019904
- APAS05072019
- APAS05242019
- APAS06192019904
- APAS07082019
- APAS07302019
- APAS08142019906

62.    Despite issuing all of the foregoing TSBs—a tacit recognition of the Defect in and of itself—Honda has not issued a recall relating to the Defect.

***Honda Knew the Tailgate Wiring Harnesses in the Ridgelines are Defective***

63.    At the same time Honda was selling the Class Vehicles to Plaintiffs and the car-buying public, Honda was well aware of the problems with Class Vehicles'

---

[7] NATIONAL HIGHWAY TRAFFIC SAFETY ADMIN., ENGINEERING REQUEST FOR INVESTIGATION, https://static.nhtsa.gov/odi/tsbs/2019/MC-10154180-0001.pdf.

[8] *See* ABOUTAUTOMOBILE, *2017 Honda Ridgeline Tailgate Technical Service Bulletins*, https://www.aboutautomobile.com/Technical-Service-Bulletin/2017/Honda/Ridgeline/Tailgate;

https://www.aboutautomobile.com/Technical-Service-Bulletin/2018/Honda/Ridgeline/Tailgate (last visited May 21, 2021)

- 24 -

CLASS ACTION COMPLAINT

tailgate wiring harnesses, both from the internal validation and testing that Honda performed and from its past experience and expertise designing automotive wiring.

64. The fact that metal wire has a finite fatigue life and wiring applications involving large deflection (such as the tailgate wiring harness) require special attention to guarantee function over a large number of load cycles is readily obvious to qualified engineers, and is well known to Honda.

65. Federal regulations require automobile manufacturers to build vehicles that comply with the Federal Motor Vehicle Safety Standards (49 C.F.R. § 571). The existence of these standards necessarily requires Honda to extensively test its vehicles prior to selling them. During the course of these and other quality validation testing conducted by its engineers prior to their sale, Honda became aware of the defective wiring harness.

66. Honda utilizes test fixtures designed to replicate average use of doors, liftgates, tailgates, and trunk lids. Because Honda tested the tailgate on Class Vehicles for tens of thousands of load cycles before taking the Vehicles to the market for sale, Honda discovered, and knew or should have known about, the wiring defect before the Vehicles were sold or leased.

67. Honda was also aware of the Defect based upon the raft of negative consumer responses and reactions about the Class Vehicles, yet it continued to sell and lease the Vehicles with the Defect.

68. Honda closely reviews Honda and Honda-related automobile message boards, consumer websites, complaints on the NHTSA website, and other websites and sources relating to its vehicles and defects, complaints, or other issues pertaining to the Honda's vehicles, including the Class Vehicles. It specifically pays considerable attention to electrical issues in its automobiles, as properly functioning electrical systems are necessary to ensure that critical safety features are operable.

CLASS ACTION COMPLAINT

Notably, Honda previously issued a recall for 2017 Ridgelines relating to electrical failures in those vehicles caused by moisture intrusion in the tailgate harness. *See* https://hondanews.com/en-US/releases/statement-by-american-honda-regarding-rear-wire-harness-recall-2017-ridgeline-awd. Although this recall was unrelated to the Defect, in the course of its investigation into the moisture intrusion defect, Honda necessarily discovered the Defect in the 2017 Ridgelines at the time it issued this recall, and could and should have issued a recall relating to the Defect at that time, or any time thereafter, but it has failed to do so.

69.     Honda specifically monitors customers' complaints made to NHTSA. Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

70.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of its ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Honda USA is Honda Japan's agent to interface with NHTSA to monitor complaints, respond to inquiries, conduct recalls, and assist NHTSA with investigations. Thus, Honda knew or should have known of the complaints about the Defect logged by NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Honda to the Defect.

71.     Honda had knowledge, or should have known, about the Defect from all of these sources, yet it issued a series of TSBs that did nothing to remedy the

CLASS ACTION COMPLAINT

Defect; continued to sell Class Vehicles with a well-known safety issue; declined to issue a recall despite the prevalence of the issue; and has sat on its hands as Honda dealerships routinely charge class members large sums of money when they present their Vehicles for repair of the Defect after it inevitably manifests.

72.    Honda had knowledge that its omissions regarding the safety and performance of the Vehicle were misleading, yet it continued to make the same omissions regarding the Vehicles to Plaintiffs and members of the proposed classes, despite the fact that Honda knew that the Vehicles were defective.

73.    To date, Honda has failed to remedy the Defect and continued to sell the Class Vehicles despite its knowledge of the Defect.

74.    To date, Honda has not demonstrated that it is capable of providing an adequate repair for the Defect, and Plaintiffs and class members do not know whether Honda is capable of providing a repair for the Defect. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiffs and members of the class. As a result, Plaintiffs, at this stage of the litigation, seek both restitution and a remedy at law, where the claims so permit. Further, Plaintiffs seek an injunction enjoining Honda and its agents, servants, and employees, and all persons acting under, in concert with, or for it from selling or leasing Class Vehicles without notice that they are subject to the Defect, which cannot be repaired, and that this remains the situation.

## CALIFORNIA CONTACTS

75.    Honda USA is a corporation organized and in existence under the laws of the state of California and registered to do business in the State of California. Honda USA is headquartered at 1919 Torrance Boulevard, Torrance, California.

CLASS ACTION COMPLAINT

76.    Honda USA does substantial business in California, with a significant portion of the sales and leases made in California. In fact, a majority of its work in sales, marketing, distribution, import, export, and warranty of Honda-branded products, including vehicles and parts, takes place in California.

77.    California hosts a significant portion of Defendants' U.S. operations, including sales and service offices and financial service offices, among others. Two Honda research and design facilities are located in California: one in Torrance and the other in Mountain View.

78.    In addition, the conduct that forms the basis for each and every class member's claims against Defendants emanated from Honda USA's headquarters in California, and is consistent with directives of Defendants' personnel in California.

79.    Honda USA's marketing and advertising personnel are located at its California headquarters, and the advertising and marketing schemes, as well as the Owner's Guides and Owner's Manuals describing the safety and performance of the Vehicles (which omitted to describe the Defect), were made and implemented from Honda USA's California headquarters.

80.    Honda USA's California personnel implemented its deceptive advertising scheme and other materials and have refused to repair the Defect in Plaintiffs' Vehicles.

81.    Defendants' personnel responsible for communicating with dealers regarding known problems with the defective Vehicles are also located at the California headquarters, and the decision to not inform authorized dealers of the Defect was made and implemented from Honda USA's California headquarters.

82.    Defendants have significant contacts with the state of California, and the conduct at issue herein emanated from California.

CLASS ACTION COMPLAINT

83.    As a result of Defendants' conduct, Plaintiffs and class members have suffered injury in fact and have otherwise suffered damages, and have been harmed and will continue to be harmed in the future, unless Defendants are held accountable through this litigation.

84.    Plaintiffs seek injunctive relief, actual damages, disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available, as defined herein.

## THE LIMITED REMEDIES' FAILURE OF THEIR ESSENTIAL PURPOSE

85.    Given the inherently defective nature of the Vehicles and their propensity to malfunction (or continue to malfunction) and require repair, and given Honda's total inability to repair the Defect and its non-disclosure and affirmative concealment of these facts, enforcement of the unilaterally imposed durational and damage limits of the express warranty would so oppress and surprise the Plaintiffs and class members as to render these durational and damage limits unconscionable and hence unenforceable.

86.    Under the applicable warranty, Plaintiffs and class members are entitled to the repair and replacement of defective parts. However, because the Defect persists after any repairs and replacements authorized by Defendant are made, and because Defendants knew that these actions were insufficient to cure the Defect, Plaintiffs and class members are left without any remedy under a warranty to correct the Defect. Indeed, Defendants have had numerous opportunities to correct the Defect but have failed to do so.

87.    When class members present their Vehicles for a Defect-related repair, Honda is unable to remedy the Defect. Continued presentment of Vehicles by Plaintiffs and class members to Honda in hopes of a repair or remedy would thus be futile. Simply put, Defendants' express warranty fails its essential purpose, so that

- 29 -

class members are without the benefit of their primary bargain—reliable and operational Vehicles free of material defects.

88.    The warranty service provided at Honda's, Honda's dealership', and Honda's other agents' facilities failed to fix the problems with the Vehicles. As a result of Defendants' failure to properly or adequately repair the Defect, Plaintiffs reasonably suffered direct, and reasonably foreseeable, incidental damages and did not have the benefit of a safe and reliable Vehicle.

## **TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

89.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the class were deceived regarding the Class Vehicles and could not reasonably discover the Defect or Defendants' deception with respect to the Defect.

90.    Plaintiffs and class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendants were concealing a defect and/or the Class Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiffs and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Class could not have discovered—through the exercise of reasonable diligence—the existence of the Defect or that the Defendants were concealing the Defect.

91.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and class members the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk due to their exclusive and superior knowledge of the existence and extent of the Defect in Class Vehicles.

CLASS ACTION COMPLAINT

92.     Defendants knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect. Plaintiffs and class members reasonably relied on Defendants' knowing, active, and affirmative concealment.

93.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations.

## CLASS ACTION ALLEGATIONS

94.     Plaintiffs, both individually and as a class action on behalf of similarly situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3), seek to represent the following class:

> **Nationwide Class**
> All owners and lessees of model year 2017, 2018, or 2019 Honda Ridgeline purchased or leased in the United States and its territories.

95.     Plaintiffs also bring this action on behalf of the following state classes:

> **Massachusetts Class**
> All owners and lessees of model year 2017, 2018, or 2019 Honda Ridgeline purchased or leased in the Commonwealth of Massachusetts.

> **Pennsylvania Class**
> All owners and lessees of model year 2017, 2018, or 2019 Honda Ridgeline purchased or leased in the Commonwealth of Pennsylvania.

96.     Excluded from these classes are Defendants, as well as Defendants' affiliates, employees, officers and directors, and the Judge to whom this case is assigned. Plaintiffs reserve the right to amend the definition of the classes if

CLASS ACTION COMPLAINT

discovery and/or further investigation reveal that the classes should be expanded or otherwise modified.

97.    Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

98.    **Numerosity:** The members of the Class are so numerous that joinder of all class members in a single proceeding would be impracticable. While the exact number and identities of individual members of the class is unknown at this time, such information being in the sole possession of Honda and obtainable by Plaintiffs only through the discovery process, Plaintiffs believes, and on that basis alleges, that over one hundred thousand Class Vehicles have been sold and leased in the United States.

99.    **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Such common questions of law or fact include, *inter alia*:

      a. whether Honda engaged in the conduct alleged herein;

      b. whether Honda omitted and misrepresented material facts to purchasers and lessees of Class Vehicles;

      c. whether Honda's omissions and misrepresentations regarding the Class Vehicles were likely to mislead a reasonable consumer;

      d. whether Honda breached warranties with Plaintiffs and the other class members when it produced, distributed, and sold the Class Vehicles;

      e. whether Plaintiffs' and other class members' Vehicles were worth less than as represented as a result of the Defect and conduct alleged herein;

CLASS ACTION COMPLAINT

f. whether Plaintiffs and the other class members have been damaged and, if so, the extent of such damages; and

g. whether Plaintiff and the other class members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

100.   Honda engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, are substantially overcome, in both quality and quantity, by the numerous common questions that dominate this action.

101.   **Typicality:** Plaintiffs' claims are typical of the claims of the other class members because, among other things, Plaintiffs and the other class members were injured through the substantially uniform misconduct described above. As with Plaintiffs, class members also purchased or leased a Class Vehicle containing the Defect. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other class members, and no defense is available to Honda that is unique to Plaintiffs. The same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all class members. Plaintiffs and all class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Honda's wrongful conduct in selling/leasing and failing to remedy the Class Vehicles.

102.   **Adequacy:** Plaintiffs are adequate class representative because they will fairly represent the interests of the class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and automobile defect class action cases. Plaintiffs and their counsel are

CLASS ACTION COMPLAINT

committed to prosecuting this action vigorously on behalf of the class they seek to represent and have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse or antagonistic to those of the class.

103.   **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Honda, so it would be impracticable for class members to individually seek redress for Honda's wrongful conduct. Even if class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents no significant management difficulties, if any, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

104.   Defendants have acted and refused to act on grounds generally applicable to the Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

105.   Upon information and belief, members of the class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Honda maintains regarding its sales and leases of Class Vehicles.

106.   Unless the classes are certified, Defendants will improperly retain monies that they received from Plaintiffs and members of the classes as a result of

CLASS ACTION COMPLAINT

their conduct. Unless Defendants are required to change their conduct, they will continue to commit the violations and acts alleged herein and the members of the class and the general public will continue to be misled and harmed.

## CAUSES OF ACTION

### COUNT I
### Breach of Express Warranty
### (On Behalf of Plaintiff Qu and the Massachusetts Class)

107.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

108.   Plaintiff Qu and other class members formed a contract with Honda at the time they purchased their Vehicles. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

109.   As an express warrantor, manufacturer, and merchant, Defendants had certain obligations pursuant to Honda's warranty to repair and replace defects. Mass. Gen. Laws Ch. 106 § 2-313.

110.   Defendant's New Vehicle Limited Warranty provides that "Honda will repair or replace any part that is defective in material or workmanship under normal use. . . . All repairs/replacements made under this warranty are free of charge."

111.   The owner's manual for the Class Vehicles also identifies that Honda's New Vehicle Limited Warranty "covers your new vehicle . . . against defects in materials and workmanship," and that Honda's replacement parts limited warranty "covers all Honda replacement parts against defects in materials and workmanship."

112.   Plaintiff Qu's and the other class members' Class Vehicles did not perform as promised and contained a defective tailgate wiring harness, a defect in workmanship and materials.

113.   Defendants have actual knowledge that it breached express warranties with Plaintiff and the other Class members related to the Vehicles.

- 35 -

CLASS ACTION COMPLAINT

114.   Defendant breached the terms of the express warranties with Plaintiff and other class members by not providing the Vehicles with properly functioning wiring harnesses.

115.   As detailed *supra*, Plaintiff Qu sought a warranty repair of his Vehicle during the warranty period and the repair was unsuccessful. As a result, the Defect has manifested again and Plaintiff is exposed to the unsafe wiring failure and resultant backup camera failure.

116.   Plaintiff Qu and class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under the terms of Honda's warranty, including presentment, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct described throughout this Complaint.

117.   Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

118.   In addition, upon information and belief, Defendants received numerous complaints, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the class.

119.   In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendants knew about prior to offering the Vehicles for sale and/or lease, and which Defendants did not disclose

- 36 -

CLASS ACTION COMPLAINT

and did not remedy prior to (or after) sale and/or lease, is unconscionable, and Defendants should be estopped from pursuing such defenses.

120. Further, any such effort by Defendants to disclaim or otherwise limit liability for the Defect is null and void because Honda and its authorized agents (the dealers) have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the powertrain.

121. As such, Defendants should be estopped from disclaiming liability for their actions.

122. As the foreseeable and actual result of Defendants' breaches of express warranty, Plaintiff Qu and the other class members were damaged in an amount that is difference between the value of the Vehicles if they had possessed the functional wiring and performed as represented and the value of the Vehicles they actually received. Plaintiff and the other class members suffered diminution in the value of the Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

### COUNT II

**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs and the Pennsylvania and Massachusetts Classes)**

123. Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

124. Defendants are and were at all relevant times a merchant with respect to the Vehicles, and manufactured, distributed, warranted and sold the Vehicles.

125. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold is implied by law.

- 37 -

CLASS ACTION COMPLAINT

126.    Plaintiffs and the other class members purchased the Vehicles manufactured and sold by Defendants in consumer transactions.

127.    The Vehicles, when sold and at all times thereafter, were not in merchantable condition and the wiring was not in merchantable condition and were not fit for the ordinary purpose for which cars are used. The Vehicles left Defendants' possession and control with defective wiring that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to safety.

128.    Defendants knew before the time of sale to Plaintiffs and the other class members, or earlier, that the Vehicles were produced with defective wiring that was unfit for ordinary use, that rendered the Vehicles unfit for their ordinary purposes, and that posed a serious safety threat to drivers, passengers, and everyone else sharing the road with the Vehicles. This knowledge was based on Defendants' own industry standard internal validation of its vehicles prior to launching a new model, internal testing, knowledge about and familiarity with the wiring included in the Vehicles, history of similar problems with similar wiring in prior models, and complaints by consumers and third parties.

129.    The existence and ubiquity of the Defect is illustrated by the numerous publicized consumer complaints, disputes, and failed remedial measures nationwide.

130.    Despite Plaintiffs' and the other class members' normal, ordinary, and intended uses, maintenance, and upkeep, the wiring of the Vehicles experienced and continue to experience the defect and premature failure.

131.    The wiring in the Vehicles and the Vehicles themselves are, and at all times and were, not of fair or average quality, and would not pass without objection.

132.    All conditions precedent have occurred or been performed.

133.    Plaintiff Qu and class members have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty

CLASS ACTION COMPLAINT

required under Honda's warranty, including presentment, except as may have been excused or prevented by the conduct of Defendants or by operation of law in light of Defendants' unconscionable conduct described throughout this Complaint.

134.    Defendants received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, have failed and refused to offer an effective remedy.

135.    In addition, upon information and belief, Defendants received numerous complaints, notices of the need for repair and resulting safety issues, and requests for warranty repairs and coverage relating to the Defect from other members of the class.

136.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendants knew about prior to offering the Vehicles for sale and/or lease, and which Defendants did not disclose and did not remedy prior to (or after) sale and/or lease, is unconscionable, and Defendants should be estopped from pursuing such defenses.

137.    Further, any such effort by Defendants to disclaim or otherwise limit liability for the Defect is null and void because Honda and its authorized agents (the dealers) have wrongfully, uniformly, and repeatedly refused and failed to properly repair or replace the powertrain.

138.    Specifically, Defendants' warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendants knew when it first made these warranties and their limitations that the defect existed, and the warranties might expire before a

CLASS ACTION COMPLAINT

reasonable consumer would notice or observe the defect. Defendant also failed to take necessary actions to adequately disclose or cure the Defect after the existence of the Defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the Defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendants any more time to cure the Defect or cure its breaches of warranty.

139.   As such, Defendants should be estopped from disclaiming liability for their actions.

140.   Privity of contract is not required for consumer implied warranty claims under the relevant laws. However, Plaintiffs and the other class members had sufficient direct dealings with Defendants and their agents (dealers) to establish privity of contract. Defendants, on the one hand, and Plaintiffs and the other Class members, on the other hand, are in privity because of Honda's New Vehicle Limited Warranty, which Defendants extend to Plaintiffs and the other class members.

141.   Privity is also not required in this case because Plaintiffs and the other class members are intended third-party beneficiaries of contracts between Defendants and its dealers (i.e., its agents); specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiffs and the other class members. Indeed, under the terms of the New Vehicle Limited Warranty, the warranty applies if the vehicle is "distributed by American Honda through the Honda Automobile Division, and sold or leased by a Honda automobile dealer in the United States, Puerto Rico, the U.S. Virgin Islands, Guam, and the Commonwealth of the Northern Mariana Islands." Privity is also not required because Plaintiffs' and

CLASS ACTION COMPLAINT

the other class members' Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

142.    Plaintiffs and the other class members suffered and will suffer diminution in the value of their Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

**COUNT III**

**Fraud/Fraudulent Omission**
**(On Behalf of Plaintiffs and the Nationwide Class,**
**or in the alternative, the Pennsylvania and Massachusetts Classes)**

143.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

144.    Defendants actively, intentionally, and knowingly concealed, suppressed, and/or omitted material facts including the existence of the Defect and the standard, quality, or grade of the Vehicles and the fact that the Vehicles contain a Defect and corresponding safety risk, with the intent that Plaintiffs and class rely on Defendants' omissions. As a direct result of the Defendants' fraudulent conduct, as alleged herein, Plaintiffs and members of the class have suffered actual damages.

145.    Defendants knew at the time of sale or lease and thereafter that the Vehicles contained the Defect, omitted material information about the safety of the Vehicles, and actively concealed the Defect and never intended to adequately repair the Defect during the warranty periods. To date, Defendants have not provided Plaintiffs and members of the class with an adequate repair or remedy for the Defect.

146.    Defendants possessed superior and exclusive knowledge regarding the Defect, and therefore had a duty to disclose any information relating to the safety and functionality of key safety features in the Vehicles.

CLASS ACTION COMPLAINT

147.   The Defect is material to Plaintiffs and the members of the class because Plaintiffs and the members of the class had a reasonable expectation that the Vehicles would not contain a Defect that prevents them from properly using their backup cameras and that exposes them and others to a safety risk. No reasonable consumer expects a vehicle to contain a concealed Defect in materials or workmanship, such as the Defect as well as its associated safety risk.

148.   Plaintiffs and members of the class would not have purchased or leased the Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Vehicles and the existence of the Defect and corresponding safety risk, or would have paid less for the Vehicles.

149.   Honda knew its concealment and suppression of the Defect was false and misleading and knew the effect of concealing those material facts. Honda knew its misstatements, concealment, and suppression of the Defect would sell more Vehicles and would discourage Plaintiffs and the members of the Class from seeking replacement or repair of the Defect during the applicable warranty periods.  Further, Defendants intended to induce Plaintiffs and class members into purchasing or leasing the Vehicles and to discourage them from seeking replacement or repair of the Defect in order to decrease costs and increase profits.

150.   Defendants acted with malice, oppression and fraud.

151.   Plaintiffs and the members of the Class reasonably relied upon Defendants' knowing misrepresentations, concealment and omissions.  As a direct and proximate result of Defendants' misrepresentations, omissions and active concealment of material facts regarding the Defect and the associated safety risk, Plaintiffs and the members of the Class have suffered actual damages in an amount to be determined at trial.

CLASS ACTION COMPLAINT

**COUNT IV**

**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class,**
**or in the alternative, the Pennsylvania and Massachusetts Classes)**

152.   Plaintiffs reallege and incorporate by reference the preceding paragraphs as if fully set forth herein.

153.   This claim is pleaded in the alternative to the other claims herein.

154.   As a direct and proximate result of Honda's omissions concerning and its failure to disclose the known Defect, Honda has profited through the sale and lease of the Vehicles. Although these Vehicles are purchased through Honda's agents, the money from the Vehicle sales flows directly back to Honda.

155.   As a result of its wrongful acts, concealments, and omissions of the Defect in its Vehicles, as set forth above, Honda charged higher price for the Vehicles than the Vehicles' true value.  Plaintiffs and members of the class paid that higher price for their Vehicles to Honda's authorized distributors and dealers, which are in Honda's control.

156.   Additionally, as a direct and proximate result of Honda's failure to disclose known Defect in the Vehicles, Plaintiffs and class members have Vehicles that will require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Honda.

157.   Honda has been unjustly enriched due to the known Defect in the Vehicles through the use money paid that earned interest or otherwise added to Honda's profits when said money should have remained with Plaintiffs and the class members.

158.   As a result of the Honda's unjust enrichment, Plaintiffs and the class members have suffered damages.

CLASS ACTION COMPLAINT

159.   Equity and good conscience militate against allowing Honda to retain its ill-gotten gains, and requires disgorgement and restitution of the same.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the proposed classes, pray for judgment as follows:

a)   Certification of the classes under Federal Rule of Civil Procedure 23;

b)   Appointment of Plaintiffs as representatives of classes and their counsel as class counsel;

c)   Compensatory and other damages for economic and non-economic damages;

d)   An award of restitution and/or disgorgement;

e)   An injunction requiring Defendants to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

f)   Statutory pre-judgment and post-judgment interest on any amounts;

g)   Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

h)   Such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: May 21, 2021                    Respectfully submitted,


By: */s/ Robert R. Ahdoot*
ROBERT R. AHDOOT (SBN 172098)
*rahdoot@ahdootwolfson.com*
TINA WOLFSON (SBN 174806)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**

- 44 -

CLASS ACTION COMPLAINT

1    
2    
3    
4    
5    
6    
7    
8    
9    
10    
11    
12    
13    
14    
15    
16    
17    
18    
19    
20    
21    
22    
23    
24    
25    
26    
27    
28    

2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

ANDREW W. FERICH*
aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

BEN BARNOW*
b.barnow@barnowlaw.com
ANTHONY PARKHILL*
aparkhill@barnowlaw.com
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL  60606
Telephone: (312) 261-2000

* *pro hac vice* to be filed

*Attorneys for Plaintiffs
and the Proposed Class*

- 45 -

CLASS ACTION COMPLAINT